**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-1679**

SANDRA YESENIA ESCOBAR-AMAYA,

Petitioner,

v.

PAMELA JO BONDI, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted: August 20, 2025                    Decided: October 17, 2025

Before DIAZ, Chief Judge, and HARRIS and RUSHING, Circuit Judges.

Petition for review denied by unpublished per curiam opinion.

**ON BRIEF:** Vincent Rivas-Flores, KONARE LAW, Frederick, Maryland, for Petitioner. Brian M. Boynton, Principal Deputy Assistant Attorney General, Paul Fiorino, Senior Litigation Counsel, Nancy E. Friedman, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Sandra Escobar-Amaya petitions for review of a Board of Immigration Appeals order upholding the denial of her asylum, withholding of removal, and Convention Against Torture claims. Escobar-Amaya claimed that she had been battered and abused by her former partner, and that she fled El Salvador for the United States to escape further abuse. The immigration judge rejected those claims and ordered Escobar-Amaya removed to El Salvador.

In denying relief, the immigration judge (IJ) relied mostly on an adverse credibility finding: that Escobar-Amaya's claims of abuse were not credible because her testimony on critical details was both internally inconsistent and inconsistent with prior sworn statements. On the Convention Against Torture (CAT) claim – as to which the credibility determination was not entirely dispositive, *see Camara v. Ashcroft*, 378 F.3d 361, 371 (4th Cir. 2004) – the IJ went on to find Escobar-Amaya's additional evidence insufficient to establish the requisite likelihood of torture.

Escobar-Amaya appealed to the Board of Immigration Appeals (BIA). She argued, first, that the inconsistencies identified by the IJ reflected mental incompetency, not a lack of credibility, and that together with a psychological report in the record, those inconsistencies should have prompted the IJ to conduct a mental competency assessment. *See Matter of M-A-M-*, 25 I. & N. Dec. 474, 479–80 (BIA 2011). Had the IJ done so, she insisted, he would have found her incompetent, triggering a "safeguard" requiring him to disregard her inconsistent statements and put aside his credibility concerns. *See Matter of J-R-R-A-*, 26 I. & N. Dec. 609, 610–12 (BIA 2015). As to her CAT claim, Escobar-Amaya

2

further argued that the IJ erred by disregarding country-conditions evidence that would have shown, she said, that a custody dispute with her ex-partner put her at risk of torture.

The BIA disagreed. First, it found that the IJ did not err in failing to conduct a competency assessment: Escobar-Amaya's counsel never raised any concern about competency or sought a competency hearing; her psychological evaluation, conducted months earlier, did not suggest any inability to participate intelligently in removal proceedings; and her inconsistent answers alone did not merit a competency inquiry. The BIA also sustained, as not clearly erroneous, the IJ's finding as to unlikelihood of future torture. Escobar-Amaya timely petitioned this court for review under 8 U.S.C. §§ 1252(b)(1) and (d), raising the same objections she raised before the BIA.

Starting with the competency issue, we review an IJ's "factual finding of competency . . . under the substantial evidence standard." *Diop v. Lynch*, 807 F.3d 70, 75 (4th Cir. 2015). Here, however, the IJ did not make express "factual finding[s] of competency" like those in *Diop*, *id.*, and we are instead reviewing the BIA's after-the-fact assessment of the appellate record. Our court has not considered whether *Diop*'s substantial evidence standard applies in this context, as well. Neither have the parties directly addressed the question, though the government cites *Diop* and the substantial evidence standard while Escobar-Amaya calls for de novo review of the BIA's decision. We conclude that we need not resolve the standard of review issue here, because even under Escobar-Amaya's preferred, de novo standard, we find no error in the BIA's competency-related determination.

3

The BIA's procedure for assessing mental competency in immigration proceedings requires the IJ to "consider whether there is good cause to believe that the alien lacks sufficient competency to proceed without safeguards" by looking for "indicia of incompetency" at the noncitizen's hearing and in the evidentiary record. *Matter of M-A-M-*, 25 I. & N. Dec. at 479; *see Diop*, 807 F.3d at 75 (relying on *Matter of M-A-M-*). Such indicia may include, for example, an "inability to understand and respond to questions, [an] inability to stay on topic, or a high level of distraction" exhibited by a noncitizen at her hearing. *Matter of M-A-M-*, 25 I. & N. Dec. at 479. It may also include "direct assessments" of mental health, such as medical reports or testimony from health professionals, included in the record. *Id.* If, and only if, the IJ finds such "indicia of incompetency," the IJ "must take measures to determine whether [the noncitizen] is competent to participate in proceedings." *Id.* at 480.

We have independently reviewed the record here, and we agree with the BIA that no competency assessment was required. First, neither Escobar-Amaya nor her attorney raised mental illness or incompetency at her hearing. Second, the transcript of Escobar-Amaya's hearing before the IJ reveals that she "ha[d] a rational and factual understanding of the nature and object of the proceedings." *Id.* at 479 (defining competency for immigration proceedings). Indeed, Escobar-Amaya engaged in several long periods of back and forth with the IJ in which she appeared clearly able to understand and respond to questions. Third, although Escobar-Amaya was unable to recall certain details central to her claims of abuse and torture – or unable to reconcile conflicting details she had reported – "the mere inability to remember certain events and give certain testimony does

not amount to mental incompetency." *Salgado v. Sessions*, 889 F.3d 982, 988 (9th Cir. 2018).

We also agree with the BIA that Escobar-Amaya's psychological evaluation demonstrates her ability, not inability, to understand and respond to questions – even questions about the most seemingly traumatic aspects of her experience in El Salvador. To be sure, the report diagnosed Escobar-Amaya with conditions that can be associated with symptoms like "lack of concentration" and "memory problems," and she self-reported having "[p]roblems with memory and concentration." J.A. 189–90. But the report did not make any independent findings of memory or concentration issues; to the contrary, it found that Escobar-Amaya spoke consistently and in detail about the experiences that led her to leave El Salvador and that "[h]er concentration, attention, and memory all appeared to be within normal limits." J.A. 188, 190–91.

Finally, we note that Escobar-Amaya's purported indicia of incompetency do not approach the severity of those found in the two BIA precedents upon which she relies. In *Matter of M-A-M-*, the record included "several psychiatric reports that diagnose[d] [the noncitizen] with mental illness" and indicated that the noncitizen had been found incompetent and unfit to proceed with trial in criminal proceedings. 25 I. & N. Dec. at 484. Further, the noncitizen there explicitly raised his mental illness, discussed his need for medication, and asked to see a psychiatrist during his hearing. *Id*. In *Matter of J-R-R-A-*, the noncitizen "laughed inappropriately during the hearing," and his counsel expressed concern to the IJ that the noncitizen had a cognitive disability that affected his ability to testify. 26 I. & N. Dec. at 609–10. The record here includes no comparable facts.

5

Instead, Escobar-Amaya relies for "indicia of incompetency" mostly on inconsistencies in her testimony – the very same inconsistencies that undergirded the IJ's adverse credibility determination.  The BIA rejected this effort to "recast adverse credibility findings, without more, as evidence of incompetency," J.A. 4, and we agree.  Escobar-Amaya cites no authority finding inconsistent testimony sufficient to trigger a competency assessment.  To the contrary, as the BIA explained, it is clear that "a noncitizen may testify inconsistently and express confusion when asked to explain discrepancies without implicating competency to proceed in removal proceedings." *Id.*

Because the IJ did not err in failing to conduct a competency inquiry in this case, he was not required to set aside his credibility determination on competency grounds.  *See Matter of J-R-R-A-*, 26 I. & N. Dec. at 611–12.  And because an adverse credibility finding suffices to defeat asylum and withholding of removal claims where, as here, the noncitizen lacks independent evidence of her persecution, the IJ did not err in denying those claims. *See Camara*, 378 F.3d at 369–70.

Escobar-Amaya's argument on her CAT claim is also unavailing.  Here, the parties agree that we review the agency's findings of fact only for substantial evidence.  *See Rodriguez-Arias v. Whitaker*, 915 F.3d 968, 972 (4th Cir. 2019).  If the agency "arbitrarily ignore[s] relevant evidence," then we may overturn its decision as an abuse of discretion. *Id.*  And when, as here, "the BIA affirms the IJ's decision with an opinion of its own, we review both decisions." *Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018).

Having carefully reviewed the record, we find no ground for disturbing the agency's determination that Escobar-Amaya failed to make the necessary showing that "it is more

6

likely than not that [] she would be tortured" if removed to El Salvador. *See Rodriguez-Arias*, 915 F.3d at 971 (quoting 8 C.F.R. § 1208.16(c)(2)). Escobar-Amaya principally faults the BIA and IJ for failing to consider expert evidence regarding what she describes as "custody battles in countries like El Salvador that lack proper protection for battered women," which she says would support her claim that her own custody dispute with her ex-partner is likely to escalate to torture if she returns. But, as Escobar-Amaya herself recognizes, an IJ's adverse credibility finding can render such country-conditions evidence irrelevant, and that is the case here: Escobar-Amaya did not establish she falls within the group to which the country-conditions evidence pertains – battered or abused women – because her testimonial evidence to that effect was not credible. Moreover, apart from her competency-related objection, which we have disposed of already, Escobar-Amaya has not challenged that credibility finding. Thus, as the BIA found, the country-conditions evidence on which Escobar-Amaya relies was not relevant to her claim, and the IJ did not err by declining to consider it and instead denying her CAT claim. *Accord Ibarra Chevez v. Garland*, 31 F.4th 279, 293 (4th Cir. 2022).[*]

---

[*] Escobar-Amaya points to one aspect of her testimony credited by the IJ, in which she described an angry and potentially threatening statement made by her ex-partner to her mother in connection with her custody dispute, and argues that it establishes the requisite connection between her claim and her country-conditions evidence. The IJ interpreted the statement to Escobar-Amaya's mother as constituting (at most) a threat of physical harm to the *mother* – but, Escobar-Amaya says, the country-conditions evidence shows why it should be understood as a threat against *her*, as well. This argument suffers from the same flaw as the rest of Escobar-Amaya's country-conditions claims: It is still the case that the country-conditions evidence applies, by its terms, only to battered or abused women, and the IJ reasonably found a lack of credible evidence that Escobar-Amaya was battered or abused.

Accordingly, we deny Escobar-Amaya's petition for review.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*PETITION DENIED*