# United States Court of Appeals

## For the First Circuit

No. 13-2202

LAZARO ANTONIO MEJIA, a/k/a ZAPADA MEJIA,

Petitioner,

v.

ERIC H. HOLDER, JR., United States Attorney General,

Respondent.

PETITION FOR REVIEW FROM AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Lipez, <u>Circuit Judge</u>,
and Lisi,[*] <u>District Judge</u>.

<u>Stephen A. Lagana</u> on brief for petitioner.
<u>Jesse M. Bless</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, <u>Stuart F. Delery</u>, Assistant Attorney General, Civil Division, and <u>David V. Bernal</u>, Assistant Director, on brief for respondent.

June 25, 2014

---

[*] Of the District of Rhode Island, sitting by designation.

**LYNCH, Chief Judge**.  Lazaro Antonio Mejia applied for "special rule cancellation" of his removal from the United States under section 203 of the Nicaraguan and Central American Relief Act ("NACARA"), Pub. L. No. 105-100, §§ 201-204, 111 Stat. 2160, 2193-2201, as amended by Pub. L. No. 106-386, § 1510(b), 114 Stat. 1464, 1531 (2000).  He was ruled ineligible for relief on the basis of his criminal history.  In this petition, Mejia raises a single issue of law as to which we have jurisdiction.

The Board of Immigration Appeals (BIA) characterized his 1999 Massachusetts shoplifting conviction as a crime involving moral turpitude, citing one BIA opinion that considered a Pennsylvania statute, and not undertaking any analysis of Massachusetts law or a categorical approach.  The government attempts to fill in what was missing from the BIA's analysis in its brief to our court.  The petitioner both objects to the BIA not having done the analysis and argues that a modified categorical approach was required.  Because the BIA did not adequately consider the statutory issue presented, we grant the petition, vacate the BIA's order insofar as it denied relief on these grounds, and remand for further proceedings.

I.

Mejia arrived in the United States from El Salvador on an unknown date.  On April 9, 1999, he admitted to a single count of shoplifting in violation of Mass. Gen. Laws ch. 266, § 30A, and the

-2-

trial judge continued his case without making a finding of guilt while Mejia served a term of probation. After the continuance, the trial judge dismissed the shoplifting charges.

In May 2012, Mejia was charged with larceny in an amount over $250 in violation of Mass. Gen. Laws ch. 266, § 30(1), and he later admitted to an amended charge of larceny by inducement, Mass. Gen. Laws ch. 266, § 34. The trial judge continued the case without a finding of guilt, placed Mejia on probation, and ordered him to pay $500 in restitution.

On January 25, 2013, Mejia was served with a Notice to Appear, and was charged with removability on two grounds: (1) as "[a]n alien present in the United States without being admitted or paroled," 8 U.S.C. § 1182(a)(6)(A)(i); and (2) as an alien who has been "convicted of, or who admits having committed . . . a crime involving moral turpitude," id. § 1182(a)(2)(A)(i)(I). Mejia conceded removability on the first ground, but denied that he was removable on the second.

Mejia applied for special rule cancellation of removal under section 203 of NACARA before the Immigration Judge (IJ). In order to be eligible for this relief, Mejia had to show, inter alia, that he was not inadmissible for having been convicted of a crime involving moral turpitude under § 1182(a)(2). 8 C.F.R. § 1240.66(b). He conceded that his 2012 larceny by inducement conviction was such a crime but argued that he fell within the

petty offense exception, under which the bar on admissibility for those convicted of a crime of moral turpitude does not apply "to an alien who committed only one crime" if that crime does not carry a maximum penalty of over one year.  8 U.S.C. § 1182(a)(2)(A)(ii)(II) (emphasis added).

On May 7, 2013, the IJ denied Mejia's application for cancellation of removal under NACARA on grounds that need not detain us.[1]  Mejia appealed to the BIA, which dismissed his appeal on August 30, 2013.  The BIA concluded that "the Immigration Judge properly found that [Mejia]'s shoplifting conviction is also a crime involving moral turpitude rendering him ineligible for the petty offense exception . . . .  See In re Jurado-Delgado, 24 I. & N. Dec. 29, 34 (BIA 2006)."  We have just quoted the extent of its reasoning.  This petition for review followed.

II.

The government argues that we lack jurisdiction over this petition because Mejia is removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I) as a result of his conviction for a crime involving moral turpitude.  See 8 U.S.C. § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal

---

[1]     The IJ also denied Mejia's applications for asylum and for withholding of removal under the Immigration and Nationality Act § 241(b)(3) and the Convention Against Torture.  Mejia appealed those rulings to the BIA, which agreed with the IJ.  He does not raise these issues in his petition before this court and so we do not address them.

against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2). . . ."). We reject the argument we lack jurisdiction. Petitioner presents a legal issue: whether the BIA erred when it concluded, based on the analysis quoted above, that a violation of Massachusetts' shoplifting statute is a crime involving moral turpitude. See 8 U.S.C. § 1252(a)(2)(D).

The ultimate legal conclusion as to whether the offenses for which the petitioner was convicted constitute a ground for removal, or for preclusion of cancellation of removal, would be a legal issue that we would review de novo. Campbell v. Holder, 698 F.3d 29, 32 (1st Cir. 2012). That has its limits. "We afford deference to the BIA's reasonable interpretations of the [Immigration and Nationality Act], including its construction of the term 'moral turpitude,' but not to its reading of an underlying criminal statute (as to which it has no expertise)." Patel v. Holder, 707 F.3d 77, 79 (1st Cir. 2013). Where, as here, "the BIA has rendered a decision with its own analysis of the question at issue, our review focuses on the BIA's decision, not the IJ's."[2]

---

[2] Petitioner misses the point in his argument that the government bore the burden of establishing, by clear and convincing evidence, that he was deportable. He states correctly that in removal proceedings, the government "has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable." 8 U.S.C. § 1229a(c)(3)(A) (emphasis added). But this reliance is misplaced: the government in this case did not allege that Mejia had been admitted to the United States and was deportable on some

-5-

<u>Vásquez</u> v. <u>Holder</u>, 635 F.3d 563, 565 (1st Cir. 2011).

The difficulty here is that the BIA has not provided a comprehensible analysis to support its conclusion. We explain. Congress has never defined the term "moral turpitude" in the immigration law context. We have approved the BIA's definition for immigration purposes of a crime involving moral turpitude as "conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." <u>Patel</u>, 707 F.3d at 80 (quoting <u>Da Silva Neto</u> v. <u>Holder</u>, 680 F.3d 25, 29 (1st Cir. 2012)) (internal quotation mark omitted). "The focus of the moral turpitude analysis is on the inherent nature of the crime of conviction, as opposed to the particular circumstances of the actual crime committed . . . ." <u>Nguyen</u> v. <u>Reno</u>, 211 F.3d 692, 695 (1st Cir. 2000).

———————————

ground, but rather alleged that he was inadmissible under 8 U.S.C. § 1182. Further, Mejia conceded that he was removable on the first ground asserted by the government: that he was "[a]n alien present in the United States without being admitted or paroled," <u>id.</u> § 1182(a)(6)(A)(i). It is Mejia who bore the burden of proving that he is "clearly and beyond doubt entitled to be admitted and is not inadmissible," <u>id.</u> § 1229a(c)(2)(A); <u>see</u> <u>Valenzuela-Solari</u> v. <u>Mukasey</u>, 551 F.3d 53, 56 (1st Cir. 2008) (where an alien "was not admitted to the United States and so is deemed to be an applicant for admission, we have held that the alien has the burden under § 1229a(c)(2)(A) of proving he is not inadmissible.").

Petitioner also bore the burden of establishing his eligibility for special rule cancellation of removal, <u>see</u> 8 U.S.C. § 1229a(c)(4)(A), which in turn required him to show that he was not inadmissible under § 1182(a)(2).

But to answer that question the BIA must look to the pertinent state law as to the offense of conviction. The analysis of whether petitioner's shoplifting offense was a crime involving moral turpitude looks first to the "inherent nature of the crime of conviction, as defined in the criminal statute." Idy v. Holder, 674 F.3d 111, 118 (1st Cir. 2012) (quoting Maghsoudi v. INS, 181 F.3d 8, 14 (1st Cir. 1999)) (internal quotation mark omitted). The language of the statute may be clear that the conduct it proscribes fits the definition of moral turpitude. In that case, the inquiry ends with the statutory language. If, however, the statute is divisible, encompassing both turpitudinous and non-turpitudinous conduct, then the BIA must apply what we have called the "modified categorical approach," Patel, 707 F.3d at 79, under which we "look to the record of conviction -- the indictment, plea, verdict, and sentence," to determine the nature of the petitioner's conviction. Idy, 674 F.3d at 118.

Where theft offenses are involved, the BIA "generally distinguishes between turpitudinous thefts and their less depraved counterparts by asking whether the defendant intended to permanently deprive the owner of the purloined property." Patel, 707 F.3d at 80; see Matter of Grazley, 14 I. & N. Dec. 330, 333 (BIA 1973) ("Ordinarily, a conviction for theft is considered to involve moral turpitude only when a permanent taking is intended."). The question faced by the BIA was whether the

Massachusetts shoplifting statute of conviction requires an intent to permanently deprive a victim of property.

The BIA's opinion on the issue before us amounts to a one-sentence conclusion that petitioner's shoplifting conviction "is also a crime involving moral turpitude." Likewise, its sole supporting citation was to an earlier case, In re Jurado-Delgado, 24 I. & N. Dec. 29 (BIA 2006), in which the BIA addressed whether a violation of Pennsylvania's retail theft statute was a crime involving moral turpitude for these purposes.

Generally, "our review is limited to the reasoning articulated below," Patel, 707 F.3d at 80 n.1, and we have emphasized that "[a] reviewing court should judge the action of [the BIA] based only on reasoning provided by the agency, not based on grounds constructed by the reviewing court," Mihaylov v. Ashcroft, 379 F.3d 15, 21 (1st Cir. 2004) (alteration in original) (quoting Yatskin v. INS, 255 F.3d 5, 9 (1st Cir. 2001)) (internal quotation marks omitted). In this case, the BIA provided no reasoning, offering instead a bare conclusion. That is insufficient.

Further, the BIA's citation to Jurado-Delgado is misplaced in this case, which requires the parsing of Massachusetts' shoplifting statute, Mass. Gen. Laws ch. 266, § 30A. Among other differences between the two statutes, the Pennsylvania statute at issue in Jurado-Delgado did not expressly

-8-

prohibit any types of shoplifting in which the intent required was an intent to "permanently deprive" the owner of property.  See 18 Pa. Cons. Stat. § 3929.  By contrast, the Massachusetts shoplifting statute includes a section that prohibits the shoplifting of a shopping cart with "the intention of permanently depriving the merchant of the possession, use or benefit of such [a] cart."  Mass. Gen. Laws ch. 266, § 30A.  The BIA, as would have been appropriate, simply did not use the modified categorical approach, and so did not consider whether there were any relevant variations in the Massachusetts statute, see Patel, 707 F.3d at 80.  The government attempts to fill this gap by briefing to us its view of this issue in the absence of such analysis.  That is not appropriate; the BIA must do its own work.

We therefore grant the petition for review and remand to the BIA for further proceedings consistent with this opinion.