**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 2, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GABRIEL VILLEGAS-CASTRO,
a/k/a Gabreil Villegas,

    Petitioner,

v.

MERRICK B. GARLAND, United
States Attorney General,

    Respondent.
_____

PROFESSOR JUAN E. MÉNDEZ;
DISABILITY RIGHTS
INTERNATIONAL,

    Amici Curiae.
_____

No. 20-9593

**PETITION FOR REVIEW OF AN ORDER FROM THE
BOARD OF IMMIGRATION APPEALS**
_____

Harry Larson, formerly of Quinn Emanuel Urquhart & Sullivan, LLP,
Chicago, Illinois (Andrew H. Schapiro, Quinn Emanuel Urquhart &
Sullivan, LLP, Chicago, Illinois, and Keren Zwick and Tania Linares
Garcia, National Immigrant Justice Center, Chicago, Illinois, with him on
the briefs), on behalf of the Petitioner.

Rachel Browning, Trial Attorney, U.S. Department of Justice, Office
of Immigration Litigation, Washington, D.C. (Brian Boynton, Acting
Assistant Attorney General, and Keith I. McManus, Assistant Director,
U.S. Department of Justice, with her on the brief), on behalf of the
Respondent.

Simon A. Steel, DENTONS US LLP, Washington, D.C., and Grace M. Dickson, DENTONS US LLP, Dallas, Texas, filed a brief for Amici Curiae, on behalf of Petitioner.

_____

Before **BACHARACH**, **KELLY**, and **CARSON**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

Mr. Gabriel Villegas-Castro is a Mexican citizen who entered the United States without being admitted or paroled. The government sought removal, and Mr. Villegas-Castro requested asylum, cancellation of removal, withholding of removal, and protection under the Convention Against Torture. The Board of Immigration Appeals ordered removal and rejected all of Mr. Villegas-Castro's requests. We address three issues.

**The scope of the immigration judge's authority when the Board orders a remand.** The first issue involves the immigration judge's authority when the Board of Immigration Appeals orders a remand. Mr. Villegas-Castro initially lost his bid for asylum but obtained cancellation of removal. The Board remanded to the immigration judge to reconsider the cancellation of removal. On remand, Mr. Villegas-Castro filed a new asylum application and obtained relief. The government appealed and the Board reversed, concluding that the second application was not new and Mr. Villegas-Castro hadn't shown a change in circumstances. We conclude that

2

- the immigration judge properly considered the second application for asylum and

- the Board's reasoning doesn't support its denial of asylum.

**The Board's failure to apply the clear-error standard to the immigration judge's factual findings.** The second issue involves the Board's standard when reviewing an immigration judge's findings on credibility.

Under federal law, a noncitizen loses eligibility for asylum and withholding of removal when convicted of a particularly serious crime. 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B),(ii); 8 C.F.R. § 1208.16(d)(2). Invoking the bar for persons convicted of a particularly serious crime, the government argued that Mr. Villegas-Castro had lost eligibility when he was convicted of sexual battery. To resolve this argument, the immigration judge

- considered the underlying facts and the credibility of Mr. Villegas-Castro's account and

- found that the crime was not particularly serious.

The Board had to review this finding under the clear-error standard. But the Board jettisoned this standard, relying on its own disagreement with the immigration judge's findings on credibility. We conclude that the Board erred in failing to apply the clear-error standard.

**The immigration judge's discretion to reconsider eligibility for withholding of removal and deferral of removal under the Convention**

3

**Against Torture.** The third issue involves Mr. Villegas-Castro's applications for withholding of removal and deferral of removal under the Convention Against Torture. The immigration judge abated consideration of these applications. But the Board sua sponte rejected the applications, concluding that Mr. Villegas-Castro couldn't obtain relief because the immigration judge had earlier deemed Mr. Villegas-Castro ineligible for withholding of removal under federal law and the Convention Against Torture. But the immigration judge had discretion to revisit these conclusions. Until the immigration judge entered a final decision on removal, the Board had no basis to sua sponte deny withholding of removal or deferral of removal under the Convention Against Torture.

1.    **Standard of Review**

We review the Board's decision rather than the immigration judge's. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007). In reviewing this decision, we apply the de novo standard to the Board's legal determinations. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). These legal determinations include the Board's application of its own precedents and the standard of review. *See Kabba v. Mukasey*, 530 F.3d 1239, 1245 (10th Cir. 2008); *Galeano-Romero v. Barr*, 968 F.3d 1176, 1184 (10th Cir. 2020).

2.    **The Board erroneously required a material change in circumstances after treating the new asylum application as clarification of the earlier application.**

4

Mr. Villegas-Castro filed two applications for asylum. This petition for judicial review stems from the second application.

The immigration judge denied the first application but granted cancellation of removal. The Board overturned the grant of cancellation of removal and remanded to the immigration judge. On remand Mr. Villegas-Castro obtained permission to apply a second time for asylum, and the immigration judge granted the second application. The Board overturned this grant of asylum, reasoning that

- the second application was simply a clarification of the first one and

- the immigration judge couldn't revisit the first application.

Mr. Villegas-Castro challenges this reasoning.

### A.    We have jurisdiction to review the legal question of Mr. Villegas-Castro's eligibility for asylum.

The government challenges our jurisdiction, arguing that the Board made only a discretionary determination of Mr. Villegas-Castro's eligibility for asylum. We disagree.

The Board has discretion when considering the sufficiency of a change in circumstances. So that determination would ordinarily fall outside our jurisdiction. 8 U.S.C. § 1158(a)(3).

But we do have jurisdiction over questions of law. 8 U.S.C. § 1252(a)(2)(D). Given this jurisdiction, we can review legal questions

arising from the Board's determination of ineligibility for asylum. *See*

*Diallo v. Gonzales*, 447 F.3d 1274, 1281 (10th Cir. 2006).

Mr. Villegas-Castro argues that the Board's reasoning would not

render Mr. Villegas-Castro ineligible for asylum. This argument addresses

- the correctness of the Board's application of its precedent, *see In re Patel*, 16 I. & N. Dec. 600 (BIA 1978), and

- the applicability of statutory restrictions on successive applications for asylum, *see* 8 U.S.C. §§ 1158(a)(2)(C)–(D).

These inquiries involve legal questions. *See Galeano-Romero v. Barr*, 968

F.3d 1176, 1184 (10th Cir. 2020) (concluding that jurisdiction existed over

the legal question of whether the Board had departed from its precedent);

*Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068–70 (2020) (concluding

that jurisdiction existed to consider the application of a legal standard to

established facts).

**B.      Under the Board's reasoning, Mr. Villegas-Castro is eligible for asylum.**

The Board reasoned that Mr. Villegas-Castro was just amending his

original asylum application, not filing a second application. This reasoning

wouldn't prevent the immigration judge from granting asylum.

Generally, a noncitizen can file only one asylum application.

8 U.S.C. § 1158(a)(2)(C). If that application is denied, the noncitizen can

file a new asylum application only upon a material change in

circumstances. 8 U.S.C. § 1158(a)(2)(D).

6

The immigration judge treated the second asylum application as a new application and found a material change in circumstances. But the Board treated the second asylum application as just a clarification of the first application. This treatment relieved Mr. Villegas-Castro of the restrictions on a second asylum application. So if the Board were right—treating the second asylum application as a clarification of the first one—Mr. Villegas-Castro would not have needed to show a material change in circumstances. The Board's reasoning thus prevented rejection of the second asylum application on the ground that it was successive.

C.    **Under the Board's precedents, the immigration judge had discretion to reconsider Mr. Villegas-Castro's amended application for asylum.**

The government argues that Mr. Villegas-Castro couldn't amend the first application because his earlier administrative appeal hadn't challenged the immigration judge's denial of asylum. We reject this argument because the Board had earlier remanded the proceedings to the immigration judge.

When remanding, the Board "divests itself of jurisdiction of that case;" and the remand is effective "for consideration of any and all matters" that the immigration judge deems appropriate. *In re Patel*, 16 I. & N. Dec. 600, 601 (BIA 1978). The Board may retain jurisdiction or limit the remand to a particular purpose, but must do so expressly. *Id.*; *see In re M-D-*, 24 I. & N. Dec. 138, 141 (BIA 2007) ("[W]e have historically

7

treated a remand as effective for consideration of all matters unless it is specifically limited to a stated purpose.").

The Board here stated that "[t]he record [was] remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision." R. vol. 4, at 1221. Because the Board did not limit what the immigration judge could decide, the remand was general.

Six circuits have stated in published opinions that when the Board doesn't expressly retain jurisdiction or limit the scope of its remand, the immigration judge can consider new issues. *See Cano-Sadarriaga v. Holder*, 729 F.3d 25, 28 (1st Cir. 2013) (concluding that the immigration judge could consider new applications following a Board's remand for entry of a removal order and designation of the country of removal); *Linares-Urrutia v. Sessions*, 850 F.3d 477, 482 (2d Cir. 2017) (concluding that the immigration judge could address new issues when the Board stated the purpose of the remand but didn't expressly limit discretion to consider other issues); *Johnson v. Ashcroft*, 286 F.3d 696, 701–05 (3d Cir. 2002) (concluding that the Board's remand order, which stated a particular purpose, did not limit the immigration judge's authority to consider other matters); *Kouambo v. Barr*, 943 F.3d 205, 213 (4th Cir. 2019) (concluding that the immigration judge could address new issues when the Board relinquished jurisdiction); *Estrada-Rodriguez v. Lynch*, 825 F.3d 397, 403

8

(8th Cir. 2016) (concluding that the immigration judge could consider a new issue when the Board didn't say anything to prevent consideration of new issues on remand); *Bermudez-Ariza v. Sessions*, 893 F.3d 685, 686 (9th Cir. 2018) (stating that if the Board doesn't expressly retain jurisdiction or limit the scope of the remand, the immigration judge "may reconsider any of his or her prior decisions").[1] We join these circuits for three reasons.

First, the Board's published opinions serve as precedent in all proceedings involving the same issue. 8 C.F.R. § 3.1(g). As a result, the Board would need a principled reason to deviate from *Patel*. *Johnson*, 286 F.3d at 700.

Second, we are generally reluctant to create a circuit split when a number of circuits have adopted a particular position. *See United States v. Thomas*, 939 F.3d 1121, 1130 (10th Cir. 2019). For example, we have opted to follow six circuits after they'd adopted similar interpretations of the Americans with Disabilities Act. *Exby-Stolley v. Bd. of Cty. Comm'rs*, 979 F.3d 784, 804–05, 810 (10th Cir. 2020) (en banc).

---

[1]    Two other circuits have done the same in unpublished opinions. *Mung v. Barr*, 773 F. App'x 229, 229 (5th Cir. 2019) (unpublished) (concluding that the immigration judge could consider new issues because the remand order didn't expressly limit the matters to be addressed); *Abdul v. Holder*, 326 F. App'x 344, 347 (6th Cir. 2009) (same).

Third, we've taken a similar approach when interpreting our own remands. For example, when we remand without limiting the scope of matters to be considered, we ordinarily allow the district court to "exercise discretion on what may be heard." *United States v. West*, 646 F.3d 745, 749 (10th Cir. 2011).

For these three reasons, we follow the approach of the six other circuits, recognizing discretion of the immigration judge to address new matters when the Board remands without retaining jurisdiction or limiting the matters to be addressed.

When reversing the immigration judge's grant of cancellation of removal, the Board neither retained jurisdiction nor limited the matters to be addressed on remand. Instead, the Board instructed the immigration judge to (1) reconsider whether Mr. Villegas-Castro had shown good moral character for cancellation of removal and (2) allow introduction of additional evidence. These instructions did not expressly limit the scope of the remand, so the immigration judge could also reconsider Mr. Villegas-Castro's application for asylum.

\* \* \*

The Board concluded that the immigration judge had "erred in considering the application anew." R. vol. 1, at 25. But this reasoning did not support the Board's conclusion. The Board reasoned that Mr. Villegas-Castro had just clarified his original asylum application and hadn't filed a

10

new one. But if he hadn't filed a new application, he wouldn't have needed to show a material change in circumstances. *See In re M-A-F-*, 26 I. & N. Dec. 651, 654–55 (BIA 2015) (distinguishing between a "new" asylum application and "supplement" or "amendment" of the initial application). As a result, the Board's reasoning didn't undermine the immigration judge's decision to grant asylum.[2]

3.      **The Board also erred by failing to apply the clear-error standard to the immigration judge's findings on credibility.**

On remand, the immigration judge reconsidered Mr. Villegas-Castro's eligibility for both asylum and withholding of removal. When the immigration judge reconsidered eligibility, the government pointed out that Mr. Villegas-Castro had been convicted of sexual battery. If sexual battery were considered a particularly serious crime, Mr. Villegas-Castro would lose eligibility for asylum and withholding of removal. 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2).

To determine whether a conviction involves a particularly serious crime, the immigration judge considers whether the crime constitutes an aggravated felony resulting in a sentence of at least five years. *In re N-A-M-*, 24 I. & N. Dec. 336, 341–42 (B.I.A. 2007), *pet. for judicial*

---

[2]      Mr. Villegas-Castro argues in the alternative that (1) the Board erred in failing to find a material change in circumstances and (2) the existence of extraordinary circumstances would avoid the restriction on successive asylum applications. We need not address these arguments.

*review denied*, 587 F.3d 1052 (10th Cir. 2009). If the crime doesn't constitute an aggravated felony or yield a sentence of five years or more, the immigration judge would consider whether the elements bring the crime within the realm of particular seriousness. *Id.* If the crime falls within this realm, the immigration judge would consider the facts underlying the conviction to determine whether the crime is particularly serious. *Id.*

The government didn't characterize sexual battery as an aggravated felony, and Mr. Villegas-Castro didn't deny that the elements would bring the crime within the realm of particular seriousness. So the immigration judge had to examine the actual facts underlying the conviction to determine whether Mr. Villegas-Castro's sexual battery was particularly serious.

In examining the facts, the immigration judge addressed two pieces of evidence to make this determination: (1) Mr. Villegas-Castro's testimony about the events underlying the conviction and (2) an affidavit of probable cause prepared by the police. Based on these pieces of evidence, the immigration judge found that

- Mr. Villegas-Castro was credible when he testified that the encounter had been consensual and

- the probable-cause affidavit was less persuasive than Mr. Villegas-Castro's account.

Based on these credibility findings, the immigration judge decided that the crime was not particularly serious. The Board "disagreed" with the

immigration judge's findings on credibility. R. vol. 1, at 26. Unlike the immigration judge, the Board regarded Mr. Villegas-Castro as less credible than the account in the affidavit of probable cause. *Id.*

Credibility involves a classic issue of fact. *Diallo v. Gonzales*, 447 F.3d 1274, 1283 (10th Cir. 2006); 8 C.F.R. § 1003.1(d)(3)(i). So the Board properly recognized that it had to evaluate the immigration judge's credibility findings under the clear-error standard. *See* 8 C.F.R. § 1003.1(d)(3)(i) ("Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous."). "[W]here an [immigration judge] makes factual credibility determinations which the [Board] in turn rejects," "we must consider de novo whether the [Board], in making its own factual findings, actually reviewed the [immigration judge's] decision only for clear error." *Kabba v. Mukasey*, 530 F.3d 1239, 1245 (10th Cir. 2008).

Conducting de novo review, we conclude that the Board did not apply the clear-error standard. The Board never said that the immigration judge had clearly erred in finding Mr. Villegas-Castro credible; the Board said only that it disagreed with the immigration judge's finding.

In its brief, the government denies that the Board based its decision on a factual assessment of Mr. Villegas-Castro's credibility, arguing instead that the Board "determined that the Petitioner's testimony was

13

'significantly less *probative and persuasive*' than the information contained in the probable cause affidavit." Appellee's Resp. Br. at 41 (emphasis in original). But the government's characterization still falls within the domain of "credibility," which refers to an evaluation of someone's believability. *See Credibility*, Black's Law Dictionary (9th ed. 2009). So the Board erred in "reweighing" the evidence rather than applying the clear-error standard. *Kabba*, 530 F.3d at 1246; *see Ting Xue v. Lynch*, 846 F.3d 1099, 1106 (10th Cir. 2017) ("The failure of the [Board] to apply the correct standard of review on appeal from the decision of an [immigration judge] is, itself, a legal error.").[3]

**4.     The Board erred in sua sponte rejecting Mr. Villegas-Castro's applications for withholding of removal and deferral of removal under the Convention Against Torture.**

At the first hearing, the immigration judge denied Mr. Villegas-Castro's applications for (1) withholding of removal and (2) deferral of removal under the Convention Against Torture. After the Board remanded

---

[3]     Mr. Villegas-Castro also argues that

- his sexual battery would not constitute a particularly serious crime because it was a misdemeanor and

- the immigration judge's credibility assessment was not clearly erroneous.

Consideration of these arguments should take place only after the Board applies the clear-error standard in the first instance.

14

the case to the immigration judge, Mr. Villegas-Castro renewed these applications. Each was abated.

The government appealed only the grant of asylum and requested remand of the abated applications. Though neither party addressed the merits of these applications, the Board decided sua sponte that Mr. Villegas-Castro was ineligible for withholding of removal and deferral of removal under the Convention Against Torture.

The Board rejected the applications for withholding of removal under federal law and the Convention Against Torture, reasoning that Mr. Villegas-Castro had been convicted of a particularly serious crime. The Board acknowledged that someone convicted of a particularly serious crime could still seek deferral of removal under the Convention Against Torture.

But the Board concluded that the immigration judge's first decision had barred deferral of removal under the Convention. From the immigration judge's first decision, the Board drew two implications. First, the Board concluded that the first decision had prevented fresh consideration of whether to withhold removal. Second, the Board concluded that Mr. Villegas-Castro couldn't seek deferral of removal because

- the same standard governs withholding and deferral of removal under the Convention Against Torture and

- the immigration judge had already denied withholding of removal under that standard.[4]

The Board's reasoning stemmed from a mistaken assumption that its earlier remand had prevented further consideration of the applications for withholding of removal under federal law or the Convention Against Torture. But the Board didn't retain jurisdiction or limit the scope of its earlier remand. *See* Part 2(C), above. The immigration judge was thus free to revisit the application for withholding of removal, and he did.

Because the scope of the remand was not limited to reconsideration of the application for withholding of removal, the immigration judge could also revisit his earlier decision disallowing deferral of removal under the Convention Against Torture.[5] As a result, the Board erred in concluding that Mr. Villegas-Castro

- would need to justify a second application for withholding of removal and

---

[4]    The Board also reasoned in part that Mr. Villegas-Castro couldn't pursue a successive application for withholding of removal under the Convention Against Torture. The parties disagree over a noncitizen's right to pursue successive applications for withholding of removal under the Convention. But this disagreement is academic because Mr. Villegas-Castro didn't file a second application for withholding of removal. He filed only one, and the immigration judge was free to revisit this application when the Board entered a general remand without retaining jurisdiction. *See* Part 2(C), above.

[5]    The government points out that restrictions exist on reopening of decisions that have already become final. Appellee's Resp. Br. at 46. But the Board's remand prevented consideration of the immigration judge's first decision as final. *See* Part 2(C), above.

16

- couldn't obtain fresh consideration of his application for deferral of removal under the Convention Against Torture.

* * *

We conclude that the Board erred in three ways.

First, the Board erred in overturning the grant of asylum. The Board decided that Mr. Villegas-Castro had not filed a new application. But if he hadn't filed a new asylum application, he wouldn't need to show a material change in circumstances. And with the remand, the immigration judge enjoyed discretion to reconsider the availability of asylum.

Second, the Board erred in rejecting the immigration judge's credibility findings without applying the clear-error standard. The immigration judge concluded that Mr. Villegas-Castro's conviction had not involved a particularly serious crime. For this conclusion, the immigration judge considered the underlying facts and found Mr. Villegas-Castro's account credible. The Board disagreed with the immigration judge's credibility findings but didn't apply the clear-error standard. By failing to apply that standard, the Board erred.

Third, the Board erred in sua sponte deciding that Mr. Villegas-Castro was ineligible for (1) withholding of removal or (2) deferral of removal under the Convention Against Torture. The Board reasoned that the immigration judge had already denied withholding of removal under federal law and the Convention. But the Board's general remand didn't

17

prevent fresh consideration of Mr. Villegas-Castro's earlier applications. So the Board erred in sua sponte rejecting the applications for withholding of removal and deferral of removal under the Convention Against Torture.

We thus grant the petition for judicial review, remanding for the Board to reconsider Mr. Villegas-Castro's application for asylum, to apply the clear-error standard to the immigration judge's credibility findings, and to reconsider the applications for withholding of removal and deferral of removal under the Convention Against Torture.